# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY S. JAMESON, | 1:06-CV-00014 AWI NEW (DLB) HC |
| Petitioner, | FINDINGS AND RECOMMENDATIONS REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| JEANNE WOODFORD, Director, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**[1]

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Los Angeles, following his conviction by jury trial on April 27, 1984, of murder in the second degree in violation of Cal. Penal Code § 187. See Exhibit 1, Answer. Sentencing enhancement allegations were also found true. Id. On June 14, 1984, Petitioner was sentenced to a term of 15 years to life plus two years.

---

[1] This information is derived from the petition for writ of habeas corpus, Respondent's answer, the exhibits lodged with Respondent's answer, and Petitioner's traverse.

1 | Id.

2 | On September 13, 2002, a parole suitability hearing was held by the California Board of
3 | Prison Terms ("BPT") at Folsom State Prison. See Exhibits 2(a) and 2(b), Answer. Petitioner
4 | attended the hearing and represented himself. Id. At the conclusion of the hearing, the BPT
5 | denied parole and deferred rehearing for five years. See Exhibit 2(b), Answer.

6 | Petitioner filed an administrative appeal of the BPT's decision. See Exhibit 4, Answer.
7 | On July 8, 2003, the appeal was denied. Id.

8 | On October 24, 2004, Petitioner filed a petition for writ of habeas corpus in the Marin
9 | County Superior Court challenging the BPT's decision. See Exhibit 5, Answer. The case was
10 | transferred to the Los Angeles County Superior Court. Id. In a reasoned decision, on July 24,
11 | 2005, the court denied the petition. Id.

12 | Prior to the superior court's decision, on November 5, 2004, Petitioner filed a petition for
13 | writ of habeas corpus in the California Supreme Court. See Exhibit 6, Answer. The California
14 | Supreme Court summarily denied the petition on September 21, 2005. See Exhibit 7, Answer.

15 | On January 6, 2006, Petitioner filed the instant petition for writ of habeas corpus in this
16 | Court. The petition for writ of habeas corpus does not challenge the underlying conviction;
17 | rather, it challenges the September 13, 2002, decision of the California Board of Prison Terms
18 | denying parole. In his petition, Petitioner raises the following grounds for relief: 1) He contends
19 | his entire sentence has expired and the Department of Corrections is holding him in violation of
20 | his constitutional rights; 2) He argues he should be released because he has exceeded the
21 | "Maximum Release Date" set by the trial court, Department of Corrections, and parole board; 3)
22 | He argues his term should not have been extended because the BPT failed to hold an "Extended
23 | Term Hearing" within 120 days; 4) He argues he should be released because his fixed term and
24 | five-year maximum parole period have been exceeded; 5) He claims California has a zero-release
25 | policy which violates ex post facto prohibitions; 6) He claims his sentence has been
26 | unconstitutionally enhanced by the BPT's findings of fact that were not found by a jury; 7) He
27 | claims is being repeatedly resentenced by prison officials; 8) He asserts a five-year denial
28 | violates his constitutional rights; 9) He argues the parole board is made up of biased persons

appointed by the governor; and 10) He claims the BPT's decision is not supported by the evidence.

On June 5, 2006, Respondent filed an answer to the petition. Petitioner filed a traverse to the answer on June 27, 2006.

## FACTUAL BACKGROUND

On the evening of December 28th, 1982, victim Gus Jara . . . was observed leaving a restaurant in a vehicle occupied by the inmate, Barry Jameson, and two other males. At trial, witnesses testified that victim Jara had intended for the other men to go help him avenge the rape of his girlfriend. When the group arrived at the place where the rape had occurred, the three men stabbed the victim Jara 22 times calling him a snitch. Jara was later found semi-conscious at an intersection in the early morning hours of December 29th. Police transported him to a hospital where he eventually made a statement describing his attackers as inmate Jameson and a Jeff and an unknown individual. Victim Jara underwent surgery for his injuries. At approximately 10 a.m. December 29th, victim Jara's brother visited him. Victim Jara was unable to speak because of tubes in his mouth, but communicated with his brother by writing notes concerning the attack. He again identified inmate Jameson and described, in parenthesis, (Lashmett . . .). Victim Jara appeared to be recovering but died suddenly of pulmonary embolus . . . on January 3rd, 1983. David Martineau . . . a witness who saw victim Jara leave the restaurant, described the men he had seen accompanying Jara and later identified inmate Jameson and Lashmett from photographs shown him by the police. Other evidence established that victim Jara's girlfriend had been jailed for failing the drug test required of her as a condition of probation. Michael Bettencort . . . testified that victim Jara, in an effort to help secure her release, told her probation officer where she had obtained the drugs, and that location was subsequently searched. The inmate told Bettencort that Jara was 'really tripping out, he's snitching to the cops, he should be snuffed or something.' At a separate hearing held pursuant to Evidence Code section 402, the court held that the statements and notes of the 29th were admissible as dying declarations.

See Exhibit 2(a) at pp. 19-21[2], Answer.

## DISCUSSION

I.   Timeliness of Petition

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"). The AEDPA imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), *cert. denied,* 118 S.Ct. 586 (1997).

In this case, the petition was filed on January 6, 2006, and therefore, it is subject to the

---

[2]These facts are taken from the factual summary in the California Court of Appeal opinion denying Petitioner's appeal from his conviction.

3

provisions of the AEDPA.  The AEDPA imposes a one-year period of limitation on petitioners seeking to file a federal petition for writ of habeas corpus.  28 U.S.C. § 2244(d)(1).  As amended, § 2244, subdivision (d) reads:

>  (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
>  (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>  (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>  (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>  (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
>  (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

In most cases, the limitations period begins running on the date that the petitioner's direct review became final. In a situation such as this where the petitioner is challenging a parole board decision, the Ninth Circuit has held that direct review is concluded and the statute of limitations commences when the final administrative appeal is denied. See Shelby v. Barlett, 391 F.3d 1061, 1066 (9th Cir.2004) (holding that the Board of Prison Term's denial of an inmate's administrative appeal was the "factual predicate" of the inmate's claim that triggered the commencement of the limitations period); Redd v. McGrath, 343 F.3d 1077, 1079 (9th Cir.2003) (same). Therefore, the limitations period commenced on July 9, 2003, the day after Petitioner's appeal of the Board's 2002 decision was denied. Under Section 2244(d)(1)(D), Petitioner had one year until July 8, 2004, absent applicable tolling, in which to file his federal petition for writ of habeas corpus. Petitioner did not file his federal petition until January 6, 2006, which is 547 days after the limitations period had expired.

A.  Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)

Title 28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one year limitation period. 28 U.S.C. § 2244(d)(2). In Carey v. Saffold, the Supreme Court held the statute of limitations is tolled where a petitioner is properly pursuing post-conviction relief, and the period is tolled during the intervals between one state court's disposition of a habeas petition and the filing of a habeas petition at the next level of the state court system. 122 S.Ct. 2134, 2135-36 (2002); see also Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999), *cert. denied,* 120 S.Ct. 1846 (2000); Welch v. Newland, 267 F.3d 1013, 1016 (9th Cir.2001) ("tolled period includes intervals between the disposition of a state court petition and the filing of a subsequent petition at the next state appellate level"); Patterson v. Stewart, 251 F.3d 1243, 1247 (9th Cir.2001) (stating that the "AEDPA's one-year grace period is tolled during the pendency of properly filed state petitions challenging the judgment or claim at issue.").

As stated above, the statute of limitations began to run on July 9, 2003. Although Petitioner filed two post-conviction collateral challenges with respect to the pertinent judgment or claim in the state courts, those petitions did not operate to toll the statute of limitations. The first collateral challenge was not filed until October 24, 2004, over three months beyond the expiration of the limitations period. Because the limitations period had already expired, the collateral challenges had no tolling consequences. Green v. White, 223 F.3d 1001, 1003 (9th Cir.2000) (Petitioner is not entitled to tolling where the limitations period has already run); see also Webster v. Moore, 199 F.3d 1256 (11th Cir.2000); Rendall v. Carey, 2002 WL 1346354 (N.D.Cal.2002). Therefore, the petition is untimely.

B.  Equitable Tolling

The limitations period is subject to equitable tolling if the petitioner demonstrates: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); see also Irwin v. Department of Veteran Affairs, 498 U.S. 89, 96 (1990); Calderon v. U.S. Dist. Ct. (Kelly), 163 F.3d 530, 541

(9th Cir. 1998), *citing* Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir. 1996), *cert denied*, 522 U.S. 814 (1997). Petitioner bears the burden of alleging facts that would give rise to tolling. Pace, 544 U.S. at 418; Smith v. Duncan, 297 F.3d 809 (9th Cir.2002); Hinton v. Pac. Enters., 5 F.3d 391, 395 (9th Cir.1993).

In his traverse, Petitioner argues he should receive equitable tolling for the period of time he was deprived of his legal materials due to institutional transfer. See Traverse at 2. He states in April of 2004 the California Department of Corrections shut down Petitioner's facility, Pleasant Valley State Prison ("PVSP"), for emergency reasons and began informing all inmates they were being transferred to Folsom State Prison ("FSP"). He states he was separated from his property at that time until his property was returned to him in October of 2004. Petitioner does not provide an exact date of when his property was returned; however, he states it was "before Petitioner received the letter on 12 October 2004." See Traverse at 9.

Petitioner does not provide an exact date in his Traverse as to when he initially became separated from his legal property but vaguely states it was sometime in April of 2004. The Court does not find his allegation to be credible. In a separate federal civil rights action, see Barry S. Jameson v. Scott Rawers, et al, case no. CV F 03 5593 REC SMS WMW P, Petitioner is much more specific on the timing and circumstances of the situation involving his legal documents. In his Request for Court Order to Department of Corrections to Return his Legal Documents, Petitioner refers as he does in his Traverse to the prisoner transfer from PVSP to FSP. See Exhibit 9 at pp. 1-2. However in reference to his legal documents he states they "ended up in the possession of two other persons that he was assisting in legal work" "*during the transfer* of approximately 1200 persons *in May* through July." Id. (emphasis added.)  Therefore, the Court does not accept that Petitioner was without his legal documents in April of 2004. Rather, the Court accepts Petitioner statement made in his request of September 27, 2004, in his civil rights action, that he became separated from his legal property sometime in May.

In addition, as Respondent notes, the Ninth Circuit has held that "[e]xtraordinary circumstances exist when . . . *wrongful conduct* prevents a prisoner from filing." Stillman v. LaMarque, 319 F.3d 1199, 1202 (9th Cir.2003) (emphasis added and internal quotation marks

omitted); see also Shannon v. Newland, 410 F.3d 1083, 1090 (9th Cir.2005).  Further, in each of the cases in which equitable tolling has been applied, the wrongful conduct was attributed to state officials or, occasionally, to the petitioner's counsel. Shannon, 419 F.3d at 1090; see, e.g., Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir.2000) (en banc); Lott v. Mueller, 304 F.3d 918, 925 (9th Cir.2002); Spitsyn v. Moore, 345 F.3d 796, 801 (9th Cir.2003). Here, Petitioner's statements demonstrate the obstacles he faced were his own creation and not due to any wrongful actions by prison officials. Petitioner would not have been without his legal materials if he had not loaned them out to two other inmates. Therefore, he should not be entitled to equitable tolling.

Nevertheless, even if the Court were to grant Petitioner equitable tolling for the time he was without his legal materials, his petition would still be untimely. As stated above, the limitations period commenced on July 9, 2003, the day after the BPT denied his administrative appeal. Assuming the earliest possible and credible date of May 1, 2004, 298 days of the limitations period had expired by that point. Tolling the limitations period from then on, Petitioner would be entitled to statutory tolling for the time his state petitions were pending. The California Supreme Court denied his last petition on September 21, 2005, and the decision became final the date it was issued. See Cal. Rules of Ct § 29.4(b)(2)(c). The limitations period then resumed. See Phelps v. Alameda, 366 F.3d 722, 724 n.1 (9th Cir.2004). Petitioner filed the instant federal petition on December 25, 2005.[3] With 67 left in the limitations period, the statute of limitations had already expired on November 28, 2005. Therefore, the petition remains untimely.

II.     Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

---

[3] Although the petition was filed in the District Court on January 6, 2006, the petition was dated December 25, 2005. In Houston v. Lack, the Court held that a pro se habeas petitioner's notice of appeal is deemed filed on the date of its submission to prison authorities for mailing, as opposed to the date of its receipt by the court clerk. Houston v. Lack, 487 U.S. 266, 276, 108 S.Ct. 2379, 2385 (1988).  The Ninth Circuit has applied the rule to assess the timeliness of federal habeas filings under the AEDPA limitations period. Huizar v. Carey, 273 F.3d 1220, 1222, (9th Cir. 2001), *citing* Houston v. Lack, 487 U.S. 266, 276, 108 S.Ct. 2379, 2385 (1988). Therefore under the mailbox rule, the Court deems the petition filed on December 25, 2005, the date Petitioner presumably handed his petition to prison authorities for mailing.

of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

       Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

       The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death  Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade,  538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

       As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other

words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

III.     Review of Claims

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979) (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole," Id.; and 4) the decision of the Board must be supported by "some evidence" having an indicia of reliability, Superintendent, Mass. Correc. Inst. v. Hill, 472 U.S. 445, 455 (1985); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987).

"In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128. In determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Id. Rather, the Court must determine whether there is any evidence in the record that could support the conclusion of the disciplinary board. Id., *citing* Superintendent v. Hill, at 455-56. Although Hill involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term." Id., *citing* Jancsek v. Oregon Bd. of Parole, 833 F.2d at 1390.

With regard to the procedural protections outlined in Greenholtz, as Respondent submits, Petitioner was provided all that is required. Petitioner was provided with advance notice of the

hearing, an opportunity to submit materials for the Board's consideration, an opportunity to be heard during the hearing, and a written decision explaining the reasons that parole was denied. See Exhibits 2(a) and 2(b), Answer.

Petitioner, however, contends the BPT's decision was not supported by the evidence. Nevertheless, a review of Petitioner's parole hearing reveals that the state court decision finding the BPT's decision to be supported by some evidence is not unreasonable. The superior court first noted the BPT found Petitioner's crime "demonstrated a 'callous disregard for human suffering.'" See Exhibit 5 at p. 2, Answer. Although the superior court found the BPT did not specifically find the murder was "exceptionally callous" as required by statute, see Cal. Code Regs., tit. 15, § 2402(c)(1)(D)[4], and only "callous," the fact that the victim was stabbed 22 times and left to die was evidence of an exceptionally callous murder.

The superior court next found there was some evidence supporting the BPT conclusion that the motive for the offense was "very trivial" pursuant to Cal. Code Regs., tit. 15, § 2402(c)(1)(E). In this case, the victim was stabbed 22 times because he was a "snitch." As found by the superior court, "[t]hat is a materially less significant motivation than those reasons that conventionally drive people to commit second-degree murder." See Exhibit 5 at p. 2, Answer. Therefore, there is some evidence supporting this finding.

The state court also found some evidence supported the BPT finding that Petitioner had previously inflicted or attempted to inflict serious injury on a victim pursuant to Cal. Code Regs., tit. 15, § 2402(c)(2). In his parole hearing, Petitioner admitted he had been convicted of a hit and run and someone was injured in the accident. Thus, there is some evidence supporting this

---

[4]Pursuant to Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:
    (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
    (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
    (C) The victim was abused, defiled or mutilated during or after the offense.
    (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
    (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

1  finding.

2      The state court next found there was evidence supporting the BPT finding that Petitioner
3  had engaged in serious misconduct during his incarceration. See Cal. Code Regs., tit. 15,
4  § 2402(c)(6); Cal. Code Regs., tit. 15, § 3315. According to the record, Petitioner had suffered
5  some 8 to 10 violations for serious misconduct during his incarceration. The most recent
6  occurred in 2000 when Petitioner was found guilty of trafficking narcotics. Therefore, the BPT
7  finding is supported by some evidence.

8      Last, the state court found some evidence supported the finding that Petitioner had not
9  engaged in sufficient self-help programming. See Cal. Code Regs., tit. 15, § 2402(d)(9).
10 Petitioner's criminal past included a significant drug history, and he continued to engage in such
11 activities in prison as evidenced by his disciplinary violation in 2000 for trafficking narcotics.
12 The superior court noted that Petitioner had not participated in self-help programming since
13 1994. Accordingly, there is some evidence supporting the BPT finding.

14     In light of the above, it cannot be said that the state court resolution of Petitioner's claims
15 "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly
16 established Federal law, as determined by the Supreme Court of the United States" or "resulted
17 in a decision that was based on an unreasonable determination of the facts in light of the evidence
18 presented in the State Court proceeding." 28 U.S.C. § 2254(d).

19     Petitioner also raises a number of other claims that are completely meritless. As the basis
20 for Grounds One, Two, and Four, Petitioner argues that he has already completed his sentence
21 and therefore should be released. He claims he is serving a finite term which has expired. This is
22 patently incorrect. According to the abstract of judgment, Petitioner was sentenced to an
23 indeterminate term. See Exhibit 1, Answer. The sentencing court selected the following term:
24 "For life, or a term such as 15 or 25 years to life, with possibility of parole." Id. The Court
25 selected "FIFTEEN YEARS FOR THE BASE TERM AS TO COUNT I PLUS ONE YEAR
26 PURSUANT TO PENAL CODE SECTION 12022(b) CONSECUTIVE PLUS ONE YEAR
27 PURSUANT TO 667.5(b) & 1203(e)(4) PENAL CODE CONSECUTIVE." Id. The sentence was
28 summarized as follows: "FIFTEEN YEARS TO LIFE, PLUS ONE YEAR PURSUANT

12022(b) AND ONE YEAR FOR SECTION 667.5(b) & 1203(e)(4) PENAL CODE FOR A TOTAL OF 17 YEARS TO LIFE." Id. The minimum term is obviously 17 years and the maximum term is life. Petitioner's claims to the contrary are frivolous.

In Ground Three, Petitioner contends he was not given an "extended term hearing" pursuant to Cal. Penal Code § 1170.2 within 120 days of his arrival. This claim raises an issue of state law, and generally, issues of state law are not cognizable on federal habeas. Estelle v. McGuire, 502 U.S. 62, 67, (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' "), *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"); Sawyer v. Smith, 497 U.S. 227, 239 (1990), *quoting,* Dugger v. Adams, 489 U.S. 401, 409 (1989) ("the availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution."). Moreover, the claim is completely without merit since § 1170.2 applies to inmates whose felony was committed prior to July 1, 1977. Here, Petitioner's felony was committed in 1982.

In Ground Five, Petitioner contends the State of California's "zero release policy" for indeterminately sentenced inmates is an ex post facto violation. Petitioner's contention is without merit because his 17-years-to-life sentence was not greater than that permitted by the law in effect when he was sentenced.  Because of this, there was no ex post facto violation. See Morales v. California Dep't of Corrections, 16 F.3d 1001, 1005-06 (9th Cir.1994), overruled on other grounds by 514 U.S. 499 (1995); Johnson v. Gomez, 92 F.3d 964, 968 (9th Cir.1996); see also California Dep't of Corrections v. Morales, 514 U.S. 499, 514 (1995) (noting change in method in fixing parole release date did not violate ex post facto clause). Petitioner also contends the Governor has implemented a zero-release parole policy for murderers. First, current Governor Arnold Schwarzenegger did not make the remarks Petitioner refers to in his Traverse. Therefore, Petitioner submits no evidence Governor Schwarzenegger maintains such a policy. Second, the claim is not ripe for adjudication.  Petitioner has not been found suitable for parole, and it is unknown when Petitioner will be found suitable for parole. Petitioner has not been denied the

setting of a parole release date by the governor, and there is no guarantee that Petitioner will automatically be denied parole by the governor. Petitioner also argues that the parole board has declined to find him suitable for parole based on the governor's policy. There is no evidence to support this claim. No mention is made in the decision of the parole board that a "no-parole policy" was considered or had any weight in its determination. Petitioner's arguments are purely speculative.

In Ground Six, Petitioner claims the BPT is illegally enhancing his sentence by using facts not found by a jury. This claim is also frivolous since it is well-established that the parole board is not limited to the offense itself in determining whether an inmate is suitable for parole. See Cal. Code Regs., tit. 15, § 2402; Garner v. Jones, 529 U.S. 244 (2000). In addition, Petitioner's assertion that the denial of parole violates the Supreme Court's holding in Blakely v. Washington, 542 U.S. 296 (2004), is misplaced. Blakely reaffirmed the holding in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), which held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Here, Petitioner was given a sentence of 17 years to life. The parole board's decision did not increase Petitioner's sentence beyond the maximum. Therefore, Blakely does not apply.

In Ground Seven, Petitioner argues prison officials are repeatedly resentencing him thereby violating the separation of powers and resulting in a bill of attainder. This claim is also without merit, because prison officials are not resentencing him. As previously stated, Petitioner's maximum sentence was set at life. As Petitioner himself concedes, the state can choose whether and when to give a person early release on parole. Morrissey v. Brewer, 408 U.S. 471, 477-478 (1972). The parole board has the discretion to grant parole based on evaluating an array of information about a prisoner and making a prediction whether he is ready to reintegrate into society. Id. Because the parole board is using its discretion in determining whether to grant Petitioner early release from his maximum sentence of life, there is no bill of attainder or separation of powers violation.

In Ground Eight, Petitioner complains his parole denial for a period of five years violates

the Constitution. Petitioner states that at the time of his offense, the maximum delay between parole hearings was two years. Since then, the relevant California statutes have been amended to allow for five-year denials. Petitioner claims this is an ex post facto violation because the punishment for his crime has been retroactively increased. This claim has been addressed and rejected by the Supreme Court in Garner v. Jones, 529 U.S. 244 (2000) and California Dept. of Corrections v. Morales, 514 U.S. 499 (1995). Petitioner's claim that Morales does not apply because the BPT's exercise of discretion has changed has also been rejected by the Supreme Court. Garner, 529 U.S. 253-254. The claim should be denied.

In his remaining ground for relief, Petitioner claims the parole board is biased because it is comprised of appointees by the governor who have law enforcement backgrounds. It is well-settled that the Due Process Clause prevents the state from depriving a plaintiff of a protected interest without "a fair trial in a fair tribunal." In re Murchison, 349 U.S. 133, 136 (1955). To make out a claim of unconstitutional bias, Petitioner "must 'overcome a presumption of honesty and integrity' on the part of decision-makers." Stivers v. Pierce, 71 F.3d 732, 741 (9th Cir.1995), *quoting* Withrow v. Larkin, 421 U.S. 35, 47 (1975). He must show that the adjudicator "has prejudged, or reasonably appears to have prejudged, an issue." Id., *quoting* Kenneally v. Lungren, 967 F.2d 329, 333 (9th Cir.1992), *quoting* Partington v. Gedan, 880 F.2d 116, 135 (9th Cir.1989) (Reinhardt, J. concurring and dissenting), *cert. denied,* 506 U.S. 1054 (1993).

There are two ways in which a petitioner may establish that he has been denied his constitutional right to a fair hearing before an impartial tribunal. In some cases, the proceedings and surrounding circumstances may demonstrate *actual bias* on the part of the adjudicator. Id. In other cases, the adjudicator's pecuniary or personal interest in the outcome of the proceedings may create an *appearance of partiality* that violates due process, even without any showing of actual bias. Id., *citing* Gibson v. Berryhill, 411 U.S. 564, 578 (1973).

Here, Petitioner fails to demonstrate any actual bias on the part of the hearing officers. A review of the record reveals no evidence of bias. Petitioner attempts to imply bias by asserting the officers have law enforcement backgrounds and were appointed by the governor. He also points to unsupported statistics which show parole is denied in the vast majority of cases.

15

Nevertheless, there is no evidence that hearing officers Munoz and Harmon had any personal or pecuniary interest in denying Petitioner parole. Rather, the evidence shows the hearing officers constantly assured Petitioner that he would receive a fair hearing. Petitioner's allegation that the officers' law enforcement backgrounds and the fact that they were appointed by the governor made them biased at the hearing is pure speculation and does not overcome the presumption that they acted honestly and with integrity.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED; and

2. Judgment be entered in favor of Respondent.

This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   March 27, 2007         /s/ Dennis L. Beck
3b142a                          UNITED STATES MAGISTRATE JUDGE